**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Al-Quan Romain Loyal,<br>Defendant/Movant. | CV 14-2208-PHX-GMS (MHB)<br>CR 08-0521-PHX-GMS<br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

Defendant/Movant Al-Quan Romain Loyal, who is represented by counsel, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV 14-2208 ("CV") Doc. 1 and CR 08-0521 ("CR") Doc. 820.) Plaintiff United States of America (the "government") filed a Response and Movant filed a Reply and Supplement. (CV Docs. 11, 12, 13.)

**BACKGROUND**[1]

On May 27, 2008, a grand jury returned an Indictment against Defendant and four co-defendants. Count 1 was Conspiracy to Possess with Intent to Distribute Cocaine, a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii). Count 2 was Attempt to Possess with Intent to Distribute Cocaine, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), 846. (CR Doc. 39.) The grand jury also indicted Defendant on Count 3, Possession of Firearm in

[1] Unless otherwise noted, the following facts are derived from the government's response, exhibits and attachments submitted thereto, Movant's pleadings, as well as, various other documents and transcripts in this matter's extensive criminal and civil records.

Furtherance of a Drug Trafficking Crime, a violation of 18 U.S.C. § 924(c)(1)(A)(i). (CR Doc. 39.) At the time of the indictment, privately retained counsel Thomas J. Moran Jr., represented Defendant. (CR Docs. 35, 36.)

On October 1, 2008, the government filed a 21 U.S.C. § 851 "Information" against Defendant, alleging that he had three predicate "felony drug offenses," which would require the imposition of a term of life in prison without the possibility of parole if convicted of Counts 1 or 2. 21 U.S.C. §§ 802(44), 841(a)(1), (b)(1)(A)(ii). (CR Doc. 89.) The grand jury subsequently issued a Superseding Indictment charging Defendant with being a Felon in Possession of a Firearm, a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (CR Doc. 102.)

On February 24, 2009, Defendant pled guilty to the charges in the Superseding Indictment. (CR Doc. 700.) Defendant and the government had agreed that in exchange for Defendant's guilty plea, the government would withdraw the 21 U.S.C. § 851 Information. (Reporter's Transcript ("RT") 02/24/09 7-8.)

On June 24, 2009, Defendant filed two *pro se* motions: a Motion to Withdraw Plea of Guilty and a Motion for Change of Counsel. (CR Docs. 354, 355.) The district court granted Defendant's motion for change of counsel, and appointed Mark Paige as new counsel. (CR Docs. 367, 370.)

On November 13, 2009, with the assistance of his new counsel, Defendant filed an Amended Motion to Withdraw from Guilty Plea. (CR Doc. 476.) On March 23, 2010, Defendant requested that privately retained counsel, Michael Black, be appointed as counsel, and the district court granted the motion. (CR Docs. 564, 565.) On April 20, 2010, the district court conducted a sealed hearing on the motion to withdraw from the guilty plea. (CR Doc. 581.) After further briefing, the court denied the motion. (CR Doc. 640.) On December 22, 2010, the district court sentenced Defendant to 352 months' imprisonment. (CR Doc. 700.)

Following the entry of judgment, Defendant filed a notice of appeal on January 3, 2011. (CR Docs. 700, 703.) After receiving briefs from both parties, the Ninth Circuit Court of Appeals affirmed Defendant's conviction and judgment. (Doc. 11, Attach. 1-4.)

Defendant's motion for *en banc* review was denied on March 6, 2013. Defendant's petition for writ of certiorari was denied on October 10, 2013.

On October 3, 2014, Movant filed the instant 28 U.S.C. § 2255 Motion. Movant raises three grounds for relief. (Doc. 5.) In Ground One, he contends that his Fifth and Sixth Amendment rights were violated because the Court erred in failing to have Movant present during the morning session of the December 10, 2008 conflict of interest hearing and failed to properly question Movant to insure that he was knowingly and intelligently waiving any conflict. In Ground Two, Movant contends that he received ineffective assistance of counsel, in violation of his Fifth and Sixth Amendment rights, when his attorney did not have Movant present during the morning session of the conflict of interest hearing and failed to get a proper waiver of any conflict. In Ground Three, Movant alleges that he received ineffective assistance of counsel when his attorney provided "gross misadvice" to enter into an open plea, that the advice was erroneous and illusory, and that Movant was operating under that misadvice when he entered into the open plea. (Doc. 5.)

A. <u>Conflict Proceeding</u>

Defendant and his co-defendants were involved in a conspiracy to buy seven kilograms of cocaine from an undercover agent of the Drug Enforcement Administration. (CR Doc. 502.) When the defendants were arrested, the agents seized $104,000 in cash and an AK-47 that Defendant and his coconspirators had brought to the scene of the transaction. (CR Doc. 502.)

According to the government's Response (CV Doc. 11), on October 11, 2008, the government began filing motions notifying the district court that a conflict of interest existed. The conflict related to attorney Paul Bergrin's representation of co-defendant Freddie Brown. First, Bergrin had represented Defendant in prior criminal cases. Second, attorneys Bergrin and Moran had a close business relationship, including having offices on the same floor of a particular building and sharing a common front office secretary. Third, attorney Bergrin was under a state indictment. (CR Doc. 502.)

The district court held a sealed hearing on the matter with the government, attorneys Bergrin and Moran, and co-defendant Brown. After discussing the issues, Brown waived any potential conflicts of interest. (RT 12/10/08 21, 49.) The district court then brought Defendant into the courtroom and confirmed how Defendant came to know and retain attorney Moran. (RT 12/10/08 63-73.) The district court also confirmed with Defendant that attorney Bergrin had previously represented him in prior state cases, but that now attorney Moran was the sole attorney representing Defendant, and Defendant waived any potential conflict. (RT 12/10/08 67-71, 73.)

As set forth in Movant's claims, he was not present "during the lengthy morning session" of the conflict proceeding. Defendant avers that the morning session was a critical hearing wherein details were revealed and never repeated when Defendant was in the courtroom. Moran who was representing Defendant was asked extensive questions in the morning session regarding Defendant, but again Defendant was not present to hear the questions or to respond to any conflict issues related to Bergrin. Defendant states that the Court specifically discussed with Moran conflict of interest questions that Defendant should have heard, i.e., how Moran and Bergrin's office was set up regarding their association, and how fees were paid and how Moran came to know Defendant. Defendant speculates that without being present how would he know what arrangements were made and if he himself wanted to proceed knowing this information regarding his family and Moran's relationship with Bergrin.

B. Guilty Plea Proceeding

In its Response (CV Doc. 11), the government states that on February 24, 2009, the eve of his trial, Defendant pled guilty to the charges in the Superseding Indictment in exchange for the dismissal of the 21 U.S.C. § 851 Information that would have required a statutorily-mandated sentence of life imprisonment if he were convicted. (CR Doc. 278; RT 02/24/09 7-8.) At the change-of-plea hearing, the district court engaged in a colloquy with Defendant about whether he knowingly and voluntarily pled guilty. (RT 2/24/09 4.) Again, Defendant acknowledged that attorney Moran was his counsel and re-iterated that he had

arranged the representation through his wife. (RT 2/24/09 6; RT 12/08/09 63-64.) Defendant also acknowledged that he understood his constitutional rights and was voluntarily waiving those rights by pleading guilty. (RT 2/24/09 8-9.) Defendant stated that he understood the charges against him and that his counsel had discussed them with him. (RT 2/24/09 10-11.) Defendant admitted that he understood that he could be sentenced to life imprisonment and that this meant that "[y]ou get out of prison dead." (RT 2/24/09 11-13.) The court then reiterated Defendant's constitutional rights, and Defendant again acknowledged that he was waiving those rights. (RT 2/24/09 15-16.)

The district court then reviewed the factual bases for the crimes with Defendant, and Defendant admitted his involvement in the crimes. (RT 2/24/09 17-32.) Defendant also admitted that he had prior convictions for possession of controlled substances with intent to distribute and unlawful possession of a weapon. (RT 2/24/09 32, 37-38.) The district court asked Defendant about a prior proposed plea agreement that had "the possibility" of a sentence of 15 years' imprisonment, and Defendant said that he was putting himself at the court's mercy. (RT 2/24/09 34-36.) Moran stated that Defendant chose to plead without an agreement so that he could argue that the appropriate sentence was one at "the lower end of the minimum mandatory" sentence. (RT 2/24/09 36.)

C. Proceedings on Defendant's Motion to Withdraw

On May 19, 2009, attorney Moran was arrested in New Jersey and indicted in a federal criminal conspiracy with attorney Bergrin and others. (CR Doc. 334.) On June 23, 2009, Defendant filed a *pro se* motion for change of counsel and a *pro se* motion to withdraw his guilty plea. (CR Docs. 354, 355.) The district court granted Defendant's motion for a change of counsel and appointed attorney Mark Paige as his new counsel. (CR Doc. 370.)

Attorney Paige filed an amended motion to withdraw Defendant's guilty plea, arguing that (1) Moran had an undisclosed conflict of interest with Defendant and could not properly represent Defendant because Moran was under Bergrin's control; (2) Moran provided Defendant ineffective assistance of counsel; and (3) Defendant's plea was not knowing and voluntary. (CR Doc. 476.) The government responded that nothing indicated that attorney

Moran was under attorney Bergrin's control regarding Defendant's representation, and that Defendant stated at his change-of-plea hearing that he arranged for attorney Moran's representation through his wife. (CR Doc. 502.) The government also argued that the district court had gone through a complete colloquy with Defendant and that Defendant acknowledged that he understood his rights and voluntarily pled guilty. (CR Doc. 502.) The government further argued that attorney Moran did not provide ineffective assistance of counsel because his advice that Defendant plead guilty was a strategic choice "within the wide range of professional assistance." (CR Doc. 502.)

On March 23, 2010, Defendant asked that attorney Michael Black replace attorney Paige as his counsel, and the district court granted the substitution. (CR Docs. 564, 565.) The district court conducted an evidentiary hearing on the motion to withdraw Defendant's guilty plea on April 20, 2010. (RT 4/20/10 3.) Defendant testified that his family arranged for attorney Moran to represent him in the criminal proceedings, but that attorneys Moran and Bergrin met with him together about his case. (RT 4/20/10 6, 8.) Attorney Moran told Defendant that he (attorney Moran) would represent him and later tried unsuccessfully to get him released at a detention hearing. (RT 4/20/10 9, 13.) Two weeks later, attorney Moran met with Defendant again and reviewed the statements of his co-defendants. (RT 4/20/10 13-16.)

Defendant also testified that a month after the detention hearing, attorneys Moran and Bergrin met with him to discuss the government's plea offer of 15 years' imprisonment. (RT 4/20/10 17.) Defendant knew that attorney Bergrin represented co-defendant Brown. (RT 4/20/10 17.) Defendant told both attorneys that he "wasn't taking it," (the plea offer) and Bergrin said that he would get a "lower plea." (RT 4/20/10 18.)

Defendant subsequently met with attorney Moran in preparation for trial, and attorney Moran showed him a note from attorney Bergrin, which said that Defendant should plead guilty because if he went to trial and lost, the court would sentence him to life imprisonment. (RT 4/20/10 22-24.) Attorney Moran told Defendant that he would rather see Defendant serve 15 years' imprisonment than life, and said that Defendant should "plead open." (RT 4/20/10 24.) Attorney Moran said that he could get Defendant "the regular plea." (RT

4/20/10 25.) Attorney Moran told Defendant that he would get the government not to use his old convictions to increase his sentence to life imprisonment. (RT 4/20/10 28.) At the change-of-plea proceeding, Defendant knew that he was pleading guilty to "the whole case." (RT 4/20/10 30.) Defendant testified that he did not know that the presentence report, prepared after his change of plea, recommended that he be sentenced to more than 300 months' imprisonment until attorney Paige showed the report to him. (RT /4/20 10 32.)

On cross-examination, Defendant admitted that he knew that if he went to trial and lost, he would be facing a statutory mandatory term of life in prison. (RT 4/20/10 35.) He also admitted that he knew about the potential conflicts of interest revolving around attorney Bergrin's representation of co-defendant Brown, and noted that attorney Bergrin's representation of co-defendant Brown was "fine" with him. (RT 4/20/10 35-36.) Defendant reiterated that his family had arranged for attorney Moran to represent him. (RT 4/20/10 36-37.) Defendant stated that he did not like the plea agreement but wanted it if the other choice was life in prison. (RT 4/20/10 37-38.) Defendant acknowledged that attorney Moran advised him to plead guilty after discussing with him the statements of his co-conspirators that the government was going to present at trial. (RT 4/20/10 39-40.)

Defendant admitted that he knew from the plea proceedings that the government would dismiss the allegation of prior convictions so that he would not be subject to mandatory life imprisonment. (RT 4/20/10 41.) He also admitted that he knew that the minimum sentence he could receive was 15 years' imprisonment, but that the district court could still sentence him to life imprisonment. (RT 4/20/10 42.) He understood that life imprisonment meant that he would never get out of prison. (RT 4/20/10 43.) He also understood his trial rights and the charges against him. (RT 4/20/10 43.) He stated that he understood that attorney Moran had made a tactical decision for him "plead open" because it allowed attorney Moran to present mitigation evidence that would justify a sentence near the low end of the mandatory minimum 15 years' imprisonment. (RT 4/20/10 44.) Attorney Moran planned to present evidence about Defendant's charitable activities. (RT 4/20/10 50.) Defendant further admitted that attorney Paige had told him that the government had

re-extended the plea offer that guaranteed him a sentencing range of 15 to 23 years' imprisonment and that he (Defendant) had decided not to accept that offer. (RT 4/20/10 45-46.)

The district court requested additional briefing on Defendant's motion to withdraw his guilty plea, which the parties provided. (CR Docs. 627, 631.) For the first time in the proceedings, Defendant claimed that he could withdraw from his plea because he moved to withdraw before the district court had accepted the plea. (CR Doc. 627.)

After considering the testimony and the briefings, the district court denied the motion to withdraw. (CR Doc. 640.) The district court first rejected the claim that the court had not accepted the guilty plea before Defendant had moved to withdraw, finding that the minute entry for the plea hearing of February 24, 2009, showed that the court had accepted the plea. (CR Doc. 640.) The district court then found that Defendant had not presented a "fair and just reason" for the withdrawal. (CR Doc. 640.) The district court rejected Defendant's claim that an undisclosed conflict of interest existed because of attorney Moran's association with attorney Bergrin, finding that Defendant was present in court when attorney Bergrin's representation of co-defendant Brown was discussed and that Defendant acknowledged that Defendant's wife had retained attorney Moran as his counsel. (CR Doc. 640.)

The district court also rejected Defendant's claims that attorney Moran provided ineffective assistance of counsel and that his guilty plea was not knowing and intelligent. (CR Doc. 640.) The district court found that at the change-of-plea hearing that Defendant: (1) stated that he was satisfied with attorney Moran's representation and that his wife had retained attorney Moran to represent him; (2) acknowledged that he had read the Superseding Indictment and had discussed the charges and the elements of the offenses with attorney Moran; and (3) stated that he pled guilty without a plea agreement and that no promises or threats had been made to coerce him into pleading guilty. (CR Doc. 640.) The district court noted that the government dismissed the § 851 Information that would have mandated that Defendant be sentenced to life imprisonment. (CR Doc. 640.) The district court further noted that Defendant was approximately 35-years-old; had a tenth-grade education; could read,

write, and understand English; was not medicated at the time of the plea; and had extensive contact with the criminal justice system because of his several previous criminal convictions. (CR Doc. 640.)

The district court also found that it had advised Defendant at the change-of-plea hearing that the minimum mandatory sentence he could receive was 15 years' imprisonment and the maximum sentence was life imprisonment, and Defendant stated that he understood. (CR Doc. 640.) The district court further found that Defendant understood that the court would impose sentence and that he had pled guilty to accept responsibility for his crimes and was putting himself at the court's mercy. (CR Doc. 640.) The district court noted that attorney Moran had planned to argue at sentencing for the lower end of the sentencing range. (CR Doc. 640.)

The district court also relied on the evidence at the motion to withdraw Defendant's guilty plea hearing. (CR Doc. 640.) The district court found that at that hearing Defendant affirmed that he understood the nature of the crimes and stated that he had understood that the sentencing range was a minimum of 15 years' imprisonment and a maximum of life imprisonment and knew what that meant. (CR Doc. 640.) The district court concluded that the record did not support Defendant's claims that he believed that he would receive a 15-year sentence if he pled guilty without an agreement and that his plea was not knowing and intelligent. (CR Doc. 640.)

D. Sentencing and Appeal

On December 22, 2010, the district court sentenced Defendant to 352 months' imprisonment. (CR Doc. 700.)

The pleadings reflect that in his direct appeal to the Ninth Circuit, Defendant asserted several issues. As relevant to the instant matter, however, Defendant argued that the district court abused its discretion in denying his motion to withdraw from his guilty plea. (Doc. 11, Attach. 1, 3.) Defendant presented three arguments in support of this claim. First, Defendant argued that his motion to withdraw his guilty plea was filed before the district court had formally accepted the guilty plea. (Doc. 11, Attach. 1.) Second, Defendant asserted that his

counsel at the time of his guilty plea, attorney Moran, had a conflict of interest in representing him because he was subsequently arrested and indicted on unrelated federal charges. (Doc. 11, Attach. 1.) The government countered, detailing that attorney Moran's indictment certainly justified his removal from representing Defendant and the appointment of new counsel – which the district court did once the indictment was revealed – but it created no conflict of interest at the time of the guilty plea because attorney Moran's arrest and indictment occurred after Defendant had knowingly and voluntarily pled guilty. (Doc. 11.)

Third, Defendant argued that attorney Moran provided ineffective assistance of counsel that justified the withdrawal of the guilty plea because he (attorney Moran) did not advise Defendant of the upper sentencing range of the proposed plea agreement, and further urged Defendant to plead guilty without a plea agreement, which exposed Defendant to a more severe sentence. (Doc. 11, Attach. 1.) The government countered, detailing that the record showed that Defendant rejected the plea agreement not because of any alleged deficiency in attorney Moran's advice, but because Defendant wanted a plea agreement with a lower sentencing range than the government had chosen to offer. (Doc. 11.) This was emphasized by Defendant's refusal to accept a similar plea agreement offered after Defendant had pled guilty without an agreement (the rejected plea offer communicated to Defendant by attorney Paige). Because Defendant refused to accept the government's plea offer, attorney Moran's advice to plead guilty was reasonable because it would allow him to argue for the minimum sentence under the Sentencing Guidelines while removing Defendant's exposure to the statutorily-required mandatory minimum sentence of life imprisonment under 21 U.S.C. §§ 841(b)(1) and 851. (Doc. 11.)

On February 3, 2013, the Ninth Circuit Court of Appeals affirmed the district court's denial of Defendant's motion to withdraw his guilty plea, and further affirmed his sentence. (Doc. 11, Attach. 4.) In its ruling, the appellate court found that "(t)rial counsel's indictment created no conflict of interest at the time of the plea because the indictment occurred months after Loyal had knowingly and voluntarily pled guilty." (Doc. 11, Attach. 4.) Additionally,

the appellate court dispelled any additional allegation of conflict by stating that "Loyal's allegation that a conflict of interest existed is undermined by the fact that the district court had made inquires of Loyal as to whether he would waive any potential conflict and determined that he had done so." (Doc. 11, Attach. 4.)

The appellate court then addressed Defendant's ineffective assistance of counsel claim, finding it meritless. Citing to Strickland v. Washington, 466 U.S. 668, 690 (1984), the appellate court stated that Defendant's decision to enter into his guilty plea was based upon a defense strategy and it was "not unfairly obtained, nor was it given through ignorance, fear or inadvertence." (Doc. 11, Attach. 4.)

**DISCUSSION**

The government claims in its Response that Movant is not entitled to relief on any of his claims. Specifically, the government argues that Movant's claims are either meritless or are not cognizable in a § 2255 proceeding.

In Ground One, Movant contends that his Fifth and Sixth Amendment rights were violated because the Court erred in failing to have him present during the morning session of the December 10, 2008 conflict of interest hearing and failed to properly obtain a waiver of conflict.

Movant is barred from raising these issues because he pleaded guilty and the nature of his claims are not cognizable in a § 2255 petition. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient]." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988). A plea colloquy that satisfies "Rule 11's requirements will lead to a plea being considered knowing and voluntary, unless some misrepresentation or gross mischaracterization by counsel has tainted the plea." United States

v. Jeronimo, 398 F.3d 1149, 1157 n.5 (9th Cir. 2005), overruled on other grounds. The Court will recommend that the claims asserted in Ground One be denied.

In Ground Two, Movant contends that he received ineffective assistance of counsel, in violation of his Fifth and Sixth Amendment rights, when his attorney did not have Movant present during the morning session of the conflict of interest hearing and failed to get a proper waiver of any conflict.

Again, Movant is barred from raising this issue. Due to his guilty plea, he can only challenge his lawyer's advice related to the voluntariness of his plea, see Henderson, 411 U.S. at 267, which he has not done. In any event, the claim is meritless. The December 10, 2008 conflict hearing related to a conflict in the representation of co-defendant Brown by attorney Bergrin, in part due to a concern that Bergrin's representation of Brown was in favor of Defendant's interests. The record indicates that Defendant's sole purpose of attending any portion of the hearing was simply to confirm to the district court that his counsel was attorney Moran. (RT 12/10/08 63-73.) Nonetheless, the record demonstrates that Defendant was aware of, and waived, any potential conflict. (RT 12/10/08 63-73; RT 4/20/10 35-36.) Accordingly, Defendant is not entitled to any relief on this basis.

In Ground Three, Movant alleges that he received ineffective assistance of counsel when his attorney provided "gross misadvice" to enter into an open plea, that the advice was erroneous and illusory, and that Movant was operating under that misadvice when he entered into the open plea.

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. See id. at 689-90. To satisfy the second prong of the Strickland test, "the defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.

Ground Three is meritless. Here, the Court finds that the decision to plead open was "within the range of competence demanded of attorneys in criminal cases." United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988) (citations omitted). Because Defendant refused to accept the government's plea offer well in advance of trial, attorney Moran's advice to plead guilty on the eve of trial was inherently reasonable because of the government's willingness to move to dismiss the 21 U.S.C. § 851 Information upon Defendant's guilty plea. (RT 02/24/09 7-8.) The removal of the § 851 Information allowed attorney Moran to have the ability to argue for the minimum sentence under the Sentencing Guidelines while removing Defendant's exposure to the statutorily required mandatory minimum sentence of life imprisonment under 21 U.S.C. §§ 841(b)(1)(A) and 851. Thus, the Court fails to find deficient performance. Defendant is not entitled to any relief.

**CONCLUSION**

Having determined that Movant's claims are either meritless or are not cognizable in a § 2255 proceeding, the Court will recommend that Movant's Motion to Vacate, Set Aside, or Correct Sentence be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1 and CR Doc. 820) be **DENIED and DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The

parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 7th day of December, 2015.

Michelle H. Burns
United States Magistrate Judge